UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LAKESHA NORINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:10-CV-473 WL |
| | ) | |
| MADDOLIN BROWN and | ) | |
| DAVID FOREHAND, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Lakesha Norington, a/k/a Shawntrell Norington, a *pro se* prisoner, filed an amended complaint under 42 U.S.C. § 1983.[1] (DE 5.) Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard as when addressing a motion to dismiss under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must contain enough factual matter to state a claim for relief that is plausible on its face and to raise the right to relief above the speculative level. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. In deciding whether the complaint states a claim, the court must additionally bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint,

---

[1] Norington was born a male but claims to suffer from gender disphoria, such that she identifies herself as a female. *See Norington v. Mitcheff*, 3:11-CV-282 (N.D. Ind. filed July 14, 2011). As Norington refers to herself as a female, the court does so here without any opinion as to the validity of her claims.

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Norington alleges that she was denied proper medical care at Indiana State Prison ("ISP"). She is suing Maddolin Brown, a nurse at ISP, and David Forehand, the director of nursing. (DE 5 at 3.) She alleges that on October 6, 2010, she embarked on a hunger strike in which she refused all meals offered to her. (DE 5-2 at 3.) By October 10, 2010, she was extremely weak and feeling ill, and she told two correctional guards that she was in need of medical care. They in turn contacted the medical unit and spoke with Nurse Brown, who allegedly told them "she was not going to see me because I'm not on a hunger strike because the water in my cell was on and I purchased canteen food." (DE 5-2 at 3.) Norington acknowledges that she had water in her cell, but denies having purchased any food at the commissary. According to the complaint, the guards reiterated to Nurse Brown that Norington had not eaten since October 6, but she still refused to see her. Norington asserts that after being denied medical care, she later stood up and due to her weakness fell and hit her head, which resulted in a "big bruise" and a cut on her head. (*Id.*) She was then taken to the medical unit and treated by Nurse Brown. (DE 5 at 6-8.) She states that as a result of the fall she has a "big visible scar" on her face. (*Id.* at 7.) She seeks damages in connection with this injury, which she attributes to Nurse Brown's refusal to see her when the guards first spoke with her. (DE 5 at 7.)

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability the prisoner must show: (1) he or she had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one

2

that "a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

In regards to a hunger strike, a prisoner cannot be "permitted to engineer an Eighth Amendment violation." *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). However, at some point the refusal to eat could result in serious injury or death, and prison staff have a "right and a duty to step in and force an inmate to take nourishment." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). Similarly, the prison has a duty to intervene if the inmate's refusal to eat is the product of mental illness. *Rodriguez*, 403 F.3d at 953. An inmate may state a claim if he or she suffers some injury as a result of the failure to intervene; however, "if weight loss and temporary discomfort are the only consequences of refusing to eat," then the inmate has no

3

Eighth Amendment claim. *Owens*, 635 F.3d at 955; *see also Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006).

As recounted above, Norington alleges that after not eating for four days she felt ill and requested medical care. She alleges that Nurse Brown was told about her request and the fact that she had not eaten for four days, but nevertheless refused to see her or otherwise assess her need for medical care. She further alleges that as a result of the denial of medical care she fell and hit her head, causing injury and resulting in a permanent scar. Norington also makes reference in the complaint to taking medication regularly; at this stage it is not clear whether this medication is for a mental illness, which might have triggered a heightened concern about Norington's refusal to eat. Giving Norington the inferences to which she is entitled at this stage, she has alleged enough to proceed on a claim against Nurse Brown.

Regarding Forehand, Norington seeks to sue him for denying her grievance, in which she had requested that Nurse Brown be suspended. (DE 5-1 at 7.) The attachments to the complaint indicate that in response to Norington's grievance, Forehand examined her medical records and determined that there was no basis to suspend Nurse Brown. (*Id.*) There is no indication that Forehand was involved in Nurse Brown's refusal to assess Norington when the guards first called her, and he cannot be sued simply for denying Norington's grievance after the fact. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). Nor can he be held liable simply because he is Nurse Brown's supervisor. *Id.* at 594. Norington also claims that Forehand "lied" on the grievance form to cover up for Nurse Brown; specifically, he wrote that Norington was not cooperative when Nurse Brown attempted to assess her after she fell, which Norington claims is false. (DE 5 at 5; DE 5-1 at 7.) Even if this is true, Forehand's misstatement might have been

4

improper or unprofessional, or perhaps even a violation of internal prison policy, but it does not amount to an Eighth Amendment violation for the denial of medical care. Moreover, although this alleged misstatement obviously irritated Norington, it has no legal significance; Norington is suing over Nurse Brown's initial failure to see him, not her treatment of him following the fall. Accordingly, Forehand will be dismissed as a defendant.

For these reasons, the court:

(1) GRANTS Lakesha Norington a/k/a Shawntrell Norington leave to proceed on a claim for compensatory damages against Nurse Maddolin Brown in her individual capacity for refusing to provide her medical care during a hunger strike in violation of the Eighth Amendment;

(2) DISMISSES David Forehand;

(3) DISMISSES all other claims in the complaint;

(4) GRANTS the motion for service of process by the U.S. Marshals Service (DE 14) and DIRECTS the U.S. Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Nurse Maddolin Brown; and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Nurse Maddolin Brown respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which the *pro se* plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: December 15, 2011

                                                     s/William C. Lee  
                                                     William C. Lee, Judge  
                                                     United States District Court