UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

LAKESHA NORINGTON,                    )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )        CIVIL NO. 3:10cv473
                                      )
MADELINE BROWN, RN,                   )
                                      )
        Defendant.                    )

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant,

Madeline Brown, RN ("Nurse Brown"), on July 27, 2012.  The plaintiff, Lakesha Norington[1]

("Norington"), filed her response on August 20, 2012, to which Nurse Brown replied on August

23, 2012.

For the following reasons, the motion will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

issue of material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Not every dispute between the parties precludes summary judgment, however, since "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law" warrant a

trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all

_____

[1] Lakesha Norington, a/k/a Shawtrell Norington, was born a male but claims to suffer
from gender dysphoria, such that she identifies herself as a female.  As Norington refers to
herself as a female, the court does so here without any opinion as to the validity of her claims.

facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

At all times relevant to her Complaint, Norington was incarcerated at the Indiana State Prison. Norington filed this action for alleged violations of her Eighth and Fourteenth Amendment rights under 42 U.S.C. §1983 against Nurse Brown. In her Complaint, Norington alleges that Nurse Brown violated her Constitutional rights because she did not treat her after she initiated a hunger strike on October 6, 2010 and that she fell and hit her head as a result of weakness.

From October 2010 to December 2010, Norington was an inmate the Indiana State Prison and was enrolled in the Chronic Care Clinic for asthma and HIV. Norington also received mental health treatment for gender issues. Nurse Brown was a nurse working at the Indiana State Prison from October 2010 to December 2010.

On October 6, 2010, Norington had an appointment with Dr. Matias, a psychologist, but had to be escorted from the Medical Services Unit to segregation for disciplinary reasons. On October 10, 2010, correctional officers escorted Norington to the medical unit where Nurse Madeline Brown was working. (Aff. of Nurse Brown, paragraph 5.) Norington reported that she was on a hunger strike and had fallen and hit her head. (Aff. of Nurse Brown, paragraph 5). Because Nurse Brown could only see offenders who had submitted a proper Request for

Healthcare and been scheduled to see the nursing staff, Nurse Brown completed a Request for

Healthcare Form with Norington's complaints so that she could see her then. (*Id*.) Nurse Brown

completed the form herself rather than have Norington complete it because Norington was

handcuffed. (*Id*.) Norington reported to Nurse Brown that her hunger strike began on October 6,

2010. (*Id*.) She also reported that she hurt her head when she fell and hit her head on the door

because she felt dizzy and weak. (*Id*.) Nurse Brown documented a superficial injury to the skin

of the forehead, with a red, short, and well-defined slightly raised border. (*Id*.) She did not note

any signs or symptoms of infection. (*Id*.) Nurse Brown applied triple antibiotic ointment to

Norington's forehead. (*Id*.) Nurse Brown took Norington's vital signs, which were normal. (*Id*.)

Norington complained of being weak from her hunger strike. (*Id*.)

October 10, 2010 was the first time that Nurse Brown was aware that Norington was on a

hunger strike. (Aff. of Nurse Brown, paragraph 5.) Even though Norington reported that her

hunger strike began October 6, 2010, Nurse Brown said they would start monitoring her hunger

strike as of October 10, since they could not measure her input and output accurately with the

water turned on in her cell. (Aff. of Nurse Brown, paragraph 5.) Norington became agitated and

said she would write a complaint and she wanted to see another nurse. (*Id*.) Nurse Brown

discussed the hunger strike policy and effects of a hunger strike, but Norington would not make

eye contact with her. (*Id*.) Nurse Brown notified the captain and sergeant in charge of the hunger

strike and they said the water in Norington's cell would be turned off, so that medical staff could

accurately monitor Norington's fluid intake and output. (*Id*.) Norington then returned to her cell

in stable condition.( *Id*).

Nurse Brown did not treat Norington after October 10, 2010, but she was monitored and

treated by other members of the nursing staff. (Aff. of Nurse Brown, paragraph 6.) The medical care that Nurse Brown rendered to Norington on October 10, 2010 was in accordance with the hunger strike policy at the prison, which called for medical staff to examine an offender 72 hours after a hunger strike begins. (Aff. of Nurse Brown, paragraphs 6 and 9.) The hunger strike policy also requires that the water in the offender's cell be shut off so staff can accurately monitor the offender's fluid intake and output. (*Id*., paragraph 9.)

On October 11, 2010, mental health staff was notified of Norington's hunger strike and Nurse Dana Elrod spoke with psychologist, Dr. Reinaldo Matias, in person about it. Dr. Gerald Myers ordered that Norington's vital signs and weight be taken, and a urine dipstick done. Norington's weight was 150 pounds and her BMI was 18.75. Norington was examined by Nurse Love. Her vital signs were taken and were normal. Norington was counseled on and signed "The Effects of Starvation" form and she told Nurse Love that she was aware of the implications of not eating. She also told her that she drank small amounts of water daily. Nurse Love noted that there were no signs or symptoms of dehydration and Norington's skin looked good. Norington's vital signs were taken on October 12, 2010 and were normal. Her weight was 150 pounds. A urine dipstick was done, which showed ketones in the urine. Nurse Wiles informed Dr. Myers of this. Norington's vital signs were taken on October 13, 2010 and were normal and her weight was 146 pounds. Norington resumed eating on October 14, 2010. She also submitted a request for healthcare to restart her medical diet, claiming that she had been receiving a high calorie tray with a bedtime snack and diabetic snack three times a day, and a high protein tray with bedtime snack and diabetic snacks three times a day.

On October 15, 2010, Dr. Myers ordered a 4000 calorie/protein diet for 90 days, as well

as complete blood work, including a hemoglobin A1c test, comprehensive metabolic panel, and HIV labs. His reasons listed on the non-formulary request were that Norington was in chronic care for HIV, but had been on a hunger strike, yet requested a high calorie diet along with diabetic snacks with every meal. Norington's current weight was 146 pounds. The non-formulary request for a special diet was deferred by the Regional Medical Director, with alternative treatment plan of use of Commissary.

On October 27, 2010, Norington saw Dr. Matias, the prison psychologist. She reported to Dr. Matias that her food intake was normal. Norington was examined by the nurse practitioner in the Chronic Care Clinic on November 1, 2010. On December 29, 2010, Norington weighed 145 pounds. and her BMI was 18.12. Norington transferred from the Indiana State Prison to the Westville Correctional Facility on December 29, 2010. Nurse Brown had no more involvement with Norington's medical care after that transfer. (Aff. of Nurse Brown, paragraph 8.)

Nurse Brown contends that she is entitled to summary judgment because she prudently addressed Norington's health needs and the facts of the case do not meet the deliberate indifference standard.

Deliberate indifference to a serious medical need is an extremely high standard. Nurse Brown argues that the facts of this case are such that no jury could find that she was deliberately indifferent to Norington's medical needs. Norington alleges Nurse Brown violated the Eighth Amendment's prohibition on cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, by acting with deliberate indifference to her serious medical needs. The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the

5

States, through the Fourteenth amendment, to provide adequate medical care to incarcerated individuals. *Boyce v. Moore*, 314 F.3d 884, 888-889 (7thCir. 2002), *citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prisoner is not entitled to unqualified access to healthcare. *Boyce v. Moore*, 314 F.3d at 888-889. In addition, a prisoner cannot demand specific care and is not entitled to the best possible care. *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999).

Prison officials violate an inmate's Eighth Amendment rights if they act with "deliberate indifference" to his or her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). To establish deliberate indifference, a plaintiff must prove two elements, one objective and one subjective. The plaintiff has the burden of demonstrating that "(1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to his health or safety." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *Farmer v. Brennan*, 114 S. Ct. 1970 (1994).

An objectively serious medical need is one that has been diagnosed by a physician and that requires medical treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Pinkston v. Madry*, 440 F.3d 879 (7th Cir. 2006); *Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005); *Jackson v. Illinois Medi-Car, Inc.* 300 F.3d 760, 765 (7th Cir. 2002); *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991). Objectively serious medical needs rise to the level of injuries which are life-threatening, or pose a risk of needless pain or lingering disability if not treated immediately. *Pinkston v. Madry*, 440 F.3d. at 892; *Davis v. Jones*, 936 F.2d., at 972. Norington claims she suffered serious medical needs when she fell and hit her head on

October 10, 2010. However, according to the medical records and Nurse Brown's assessment, Norington had only a superficial cut on her head, which was addressed with triple antibiotic ointment and a band-aid. A superficial cut that is cleaned and dressed by a nurse is hardly a serious medical need. However, even if the Court gives Norington the benefit of the doubt on the first prong of the deliberate indifference standard, the undisputed evidence does not meet the second prong.

"Deliberate indifference" means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). To be deliberately indifferent, the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Pinkston v. Madry*, 440 F.3d at 879; *Farmer v. Brennan*, 511 U.S. at 837. Deliberate indifference only occurs if the defendant knows of and disregards an excessive risk to inmate health or safety. *Greeno v. Dailey*, 414 F.3d 645, 654 (7th Cir. 2005); *Estate of Cole v. Fromm*, 94 F.3d at 258-259. Deliberate indifference must be a conscious disregard of known or obvious dangers. *Board v. Farnham*, 394 F.3d at 394. To be deliberately indifferent, defendants must act with a sufficiently culpable state of mind. *Farmer v. Brennan*, 114 S. Ct. at 1981; *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991), cert. denied, 112 S. Ct. 1206 (1992). A culpable state of mind, or subjective intent, may be established by showing that the defendant had actual knowledge of impending harm that was easily preventable, such that conscious refusal to prevent the harm can be inferred from the defendant's failure to prevent it or showing that a defendant deliberately avoided acquiring knowledge of impending harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Patrick*

7

*v. Staples*, 780 F. Supp. 1528 (N.D. Ind. 1991). Deliberate indifference is a synonym for intentional or reckless conduct; reckless conduct so dangerous that the deliberate nature of the defendant's action can be inferred. *Foelker v. Outagamie County*, 394 F.3d, at 513. The defendant must know of the serious risk to the prisoner's health, *i.e.* the serious medical need at issue, and they must also consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner. *Farmer v. Brennan*, 511 U.S. at 837-838. To be deliberately indifferent, the defendant must act with reckless disregard toward the inmate's serious need by inaction or woefully inadequate action. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999). The defendant must have known that the prisoner was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so. *Board v. Farnham*, 394 F.3d at 478. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm. *Duane v. Lane*, 959 F. 2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

Medical malpractice, negligence, or even gross negligence do not constitute deliberate indifference, nor does dissatisfaction or disagreement with a doctor's course of treatment. *Johnson v. Doughty*, 433 F.3d. at 1013; *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Dunnigan v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999); *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988). Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference. *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

Nurse Brown argues that she was made aware of Norington's hunger strike on October 10, 2010. At that time, she took his vital signs, which were normal. She also educated her on the potential health effects of a hunger strike. Nurse Brown communicated with the correctional staff to turn off the water in Norington's cell so that the medical staff could accurately monitor Norington's fluid intake and output during her hunger strike. Nurse Brown then communicated Norington's hunger strike to the rest of the medical staff so that the medical staff could monitor Norington and the doctor could order appropriate tests. Nurse Brown asserts that her actions in response to Norington's hunger strike were not dismissive of Norington, but they were a pro-active, appropriate response and facilitated the proper monitoring of Norington's health during her hunger strike.

Norington alleges that she began her hunger strike on October 6, 2010. Norington then claims that she did not receive proper treatment and became weak and fell and hit her head. However, Norington did not submit a Request for Healthcare regarding this hunger strike and Nurse Brown was not aware of his hunger strike until October 10, 2010. Nurse Brown treated the superficial cut to Norington's head with triple antibiotic ointment and a dressing. Nurse Brown cannot be held to be deliberately indifferent to Norington's medical needs from October 6, 2010 to October 10, 2010 because she was unaware of her medical needs. As soon as Norington made her medical needs known to Nurse Brown, Nurse Brown took appropriate action.

In her response, Norington claims that there are several material issues of fact that preclude summary judgment for Nurse Brown, but Norington does not support those alleged issues of fact by proper citation to any admissible evidence. For example, Norington states that every nurse knew she was on a hunger strike before October 10, 2010 and therefore Nurse Brown

must have known. Norington does not support this statement with any admissible evidence.

Norington is not in a position to state what Nurse Brown knew or did not know without any

supporting evidence. The only reliable and admissible evidence about what Nurse Brown knew

and did not know is her Affidavit. Norington also repeatedly claims that Nurse Brown forged

medical documents. However, Norington does not support this allegation with any evidence.

Nurse Brown explained in her deposition that she completed a healthcare request form for

Norington on October 10, 2010 and that she did so because Norington was handcuffed and she

needed to complete the form before she could examine Norington. Nurse Brown completed the

October 10, 2010 Request for Healthcare for Norington to facilitate her healthcare. Norington

also relies on an alleged written statement from an officer, which states that Nurse Brown did not

treat  Norington. However, this alleged statement is not authenticated and is not a verified

statement from the witness and therefore it is unreliable and inadmissible.

As the admissible evidence in this case supports Nurse Brown's claim that she did not act

with deliberate indifference to Norington's medical needs, her motion for summary judgment

will be granted.

Conclusion

Based on the foregoing, Nurse Brown's motion for summary judgment [DE 55] is hereby

GRANTED.

 Entered: September 12, 2012.


s/ William C.  Lee
William C. Lee, Judge
United States District Court